Your Honor, the first case in the morning call, Eagle v. Weddell, on behalf of the Appellant, Mr. Larry Webter, on behalf of the Appellant, Eagle, Mr. Marshall Sleet. Mr. Webter. Good morning. Good morning. May it please the Court, Larry Webter for Mr. Weddell. If I may, I'd like to address the first aspect of the speedy trial issue in this case first by discussing the decisions in Van Schoik and Fosdick. I think what's significant about Van Schoik is that the Supreme Court uses some very broad language to prohibit the practice that the state might dismiss a charge and refile the identical charge under identical facts in the same case, all cases handled together in a single prosecution. And what they say basically is that a voluntary dismissal and refiling of those identical charges does not toll the speedy trial term. And the Court very explicitly says we're not talking here about mandatory joinder. We're not talking here about double jeopardy concerns. It's only a speedy trial issue that we want to discuss and decide. Why was the Supreme Court talking about tolling when that case had nothing to do with tolling? The term, if you look at just the misdemeanors, the term had run. And if you look at the felony, if it started anew, I mean, that was the issue was whether, you know, the term started anew, whether this was a new charge or an identical charge. The Supreme Court found it was an identical charge, but there was really no tolling involved in the case. Why did they use the word tolling? Well, I think you put your finger on the point I was trying to make earlier, because once the Supreme Court decides that this enhanced DUI that was refiled is the identical charge to the original misdemeanor, there's really no reason for them to talk about dismissals and refilings, is it? In other words, if, in fact, the speedy trial term had run even before the state dismissed the original misdemeanors, once the Supreme Court says, well, this enhanced felony is the same as the original misdemeanor charge, isn't that the end of the analysis? Can't they just say, well, the term ran on the misdemeanor, this is the same charge, end of story? But instead, they reach out and they say, you can't dismiss and refile the same charge over again and avoid the speedy trial term. So I think they were trying to say... But how do we overlook the fact that in Banshoi the term had run? I mean, that's a pretty significant difference, isn't it? Well, but if you look at some of the language of the case, they rely explicitly on FOSDIC. And FOSDIC is a case, a much earlier case, where the prosecution charged the defendant, the term had not run yet. In fact, hardly any of the term had run in this, I think it was a Champaign County case. They dismiss the case. The defendant is transferred to a different county. And then later on, they refile against him. And then the term runs. So the FOSDIC facts that Banshoi relies on are a situation virtually identical to our own here in Mr. Waddell's case. And they cite FOSDIC for the proposition, you cannot dismiss and refile a case and have the term told. Right, so I guess we keep asking you over and over, but we're not getting an answer here. In Banshoi, the term had run. There was nothing to told. At best, is the language then just dicta? I'm trying to answer your question as best I can. I don't think it is dicta. I think what the Supreme Court is doing is they are reaching out and they are saying it doesn't make any difference, A, whether the original charge was filed by a police officer's complaint. We're not talking about mandatory joinder. We're not talking about other legal principles. We're talking about the proposition that you cannot dismiss and refile a case and have the term somehow not considered. So, and I think what you're referring to, too, Your Honor, is that Klein reads Banshoi very narrowly. Yeah, it does. Very narrowly. But, of course, there are distinguishing factors between our situation and Klein. I mean, if you just want to look at the factual background of these cases, Mr. Waddell's case is one that's handled in a single courtroom all the time, just like Banshoi. And Klein makes a big deal out of distinguishing its own facts by saying, you know, here, Mr. Klein was prosecuted separately. We have different cases going on in traffic court than we do in the felony courtroom, and that's very significant in this case, and that's why the speedy trial demand in one doesn't apply to the other. Well, wasn't Waddell, when they enhanced the charge, didn't that go to a felony courtroom, and then when they were, they dismissed the felonies, it went back to the Mr. Mayor courtroom? Yes. But my point is, Mr. Waddell's case was always handled as a single case, a single prosecution. It wasn't like Klein, where some of them were in one courtroom and some of them were in another courtroom, and they were always handled separately, and the bonds were handled separately, and all those sorts of things. So we have an original case for Mr. Waddell, it's just a misdemeanor in traffic matters. They're continued, they're set for trial, et cetera, all in one courtroom. They're dismissed all in one courtroom, they're refiled all in one courtroom, and even when they're transferred, they're still all handled together. I appreciate you kind of going down that path, but don't you think that's kind of a dangerous position for an appellate decision to say that the outcome of a case is dependent upon the system that's set up within a particular courthouse or circuit? In other words, how you handle your cases, whether you separate them, put them all together, leave some in traffic court, put some in a felony courtroom, that impacts somebody's constitutional right to a speedy trial? Well, A, we're only talking about a statutory right, not a constitutional right. You're correct. You're correct. My mistake. But B, I think more importantly, I think the easy answer to that is defense counsel. If you want your demand to apply to all cases, just file it in all cases. You can't come into court, into the felony courtroom, and say, oh, I filed my demand in the traffic cases, Your Honor, that one applies to the other. I mean, just take another piece of paper and file it. Okay. The facts are somewhat different in Klein, but the holding is really the same holding we're talking about here, and that is, do we count the time on the speedy trial term while a case, after it was dismissed, while it was inactive until it's refiled? I mean, that's, you know, whether there are two charges, four charges, whatever. I mean, that's what we're talking about. That was the holding in Klein, and Klein, again, didn't read Van Schoik as broadly as you read Van Schoik, correct? Right, but again, as I was indicating earlier, there's a considerable difference in the factual background of Klein. What I'm trying to bring up is, isn't the holding in Klein, though, whether or not you told the term while the case is inactive? Isn't that the holding in Klein? As to the particular case in which you filed your demand, yes. Okay. So there is a factual distinguishing factor there. What about the fact that Van Schoik doesn't really mention Decatur, and therefore, what's the status of Decatur? Well, again, I think the other thing you have to look at with Van Schoik is that they reject the reasoning of the dissent. I mean, the dissent goes through all these discussions about, well, one case was filed by the police, one case was filed by the state. What about all this previous case law? What about mandatory joinder? What about double jeopardy? And the Supreme Court just sweeps all of that away, and they say, we're going to rely on FOSDIC. You have a speedy trial that is running. You can't dismiss and refile, and we don't really care about all these other considerations. So from our perspective, it's the Supreme Court reaching out and saying, we're going to apply a bright-line rule to these types of situations. The ultimate holding of FOSDIC was that the voluntary dismissal by the state cannot be used to evade the speedy trial term. Right. That's the holding, and I don't think that's changing. That's the same holding from Decatur, isn't it? Well, you know what's interesting about this, Your Honor, is that if you look at some of the language in these different decisions, some of them talk about the state purposefully manipulating the system or purposely evading the system. And when I reread Van Schoik, it doesn't use that language. It talks about, let me see if I can find the exact, oh, the dismissal and refiling cannot avoid the effect of a speedy trial demand. And I don't know if it's purposeful or not, but they drop from their discussion any talk of purposeful manipulation or evasion. Well, maybe that's because the effect of the speedy trial demand in this case was to basically determine run already. Again, I get that full circle now. We're not talking about tolling it. We're talking about the effect of the demand in this case was it's over. Right. And the other thing that's curious about it, and maybe this helps with your question, is that in Van Schoik, the defense never files a motion to dismiss on speedy trial grounds while the original charges are pending. Maybe in their minds that was a distinguishing factor that, for God knows what reason, the defense didn't raise it earlier. But you think perhaps more what was going on is the defense attorney says you want me to file this or are you going to nolly it? And they dismiss the charge. So why on earth would the defense counsel do that if the terms had already run? I mean, that's a clear winner. There's no reason not to raise that issue. So I think that was maybe a complicating factor in Van Schoik that the issue hadn't been raised earlier. All right. What does it mean when Van Schoik court said the state's ability to nolly process and later refile identical may be complicated by speedy trial concerns? That is very, I don't want to say wishy-washy, but it's very indifferent. It gives you all sorts of possibilities. It doesn't say you can't do it. It does say may be complicated. And may be that means it depends on the facts in the individual case as far as whether there's really a term that has run. Well, and here the term hadn't run at the time of the dismissal, and it wasn't even close at the time of the dismissal. We weren't trying to get around the speedy trial. It doesn't appear, at least, and the court makes no finding that there was an effort by the state to avoid the speedy trial issue when it was dismissed at 78 days or about that period of time. It seems to me that we can talk about all these linguistic differences between one case and another, all these factual differences and so forth and so on. But really what it comes down to is a questioning of whether the Supreme Court meant what it said. I mean, Klein can question it. You have questioned it this morning. But to rule otherwise is to be contrary to what the Supreme Court decided. They say you can't dismiss and refile, period, regardless of what the circumstances are. And that's what we struggle with because that's overruling a whole line of cases that have come down over the last, I don't know how many years, Penalty Court and Supreme without sub saliencio, and that's tough to deal with for us sometimes. Right. And I understand the points that you're making, and I'm not trying to evade them, but I'm just saying sometimes there are decisions by a high court that sweep away precedent or want to create a bright line rule and make it easy for everybody. And I think that's what Van Schoik does. What's your position on the standard of review for this issue? De novo. De novo on the 54 days. You do raise in your brief, though, an issue about whether the state was trying to evade the speedy trial demand. You raised two points that I recall. One is witness unavailability, whether that was an issue, and then the nowing and refiling, and they never really refiled the DUI. You raised those issues in the context of the state trying to evade the speedy trial demand, and the court made a specific finding that the state did not, in the court's opinion, trial court's opinion, try to evade the speedy trial demand. Is that de novo, too? That second part of the issue? If it's really an issue after Van Schoik, if it's really an issue. Right. Yes, I think it's a de novo review because the facts are all undisputed. Even when the court made a judgment call on those facts. Right. Does it matter when, at the time that the state nolleys, that they express a reason for nolleying it or not? And if they do express a reason, should they be held to that explanation? I think they should be held to the explanation. It's not necessarily that you can't find some kind of an evasion. Again, if that's necessary. If the state is silent, because circumstantially, I suppose, in the proper case, you could show that they were trying to evade the statute. But here, in particular, they say, well, here's what we're going to do, Your Honor. We're going to dismiss this. We're going to enhance this to a felony DUI. On the back of the indictment, they say this is an enhancement of the misdemeanor case that we had earlier. I mean, they treat it as if it's an enhanced case. And yet, when the big day comes, they never enhance it. And they never explain what might have enhanced it. And it doesn't appear that there's anything that could be used to enhance it. I think the greatest irony here is that the trial court finds, upon the state's concession, that there's a mandatory joinder violation and a speedy trial violation as to those felonies, the obstructing justice and the aggravated fleeing and eluding. How on earth can you use a mandatory joinder, a speedy trial violation, to justify a speedy trial delay? It doesn't make any sense. I mean, talk about evading the statute. So they say one thing. They do another by not enhancing the DUIs but filing an obstructing justice felony charge. And the very delay in filing is a speedy trial violation. How are we going to justify a speedy trial delay for that reason? Do you think that Decatur and Van Schnoit can be read in harmony? Can you jog my memory on Decatur? Well, Decatur basically goes the other way. Decatur is, to me, one of the distinctions here is I guess what I'm trying to get at. Maybe I should just be more clear. In Van Schnoit, again, the term had run, and in Decatur it had not run, and it talks about when the state evades versus 50 good reasons for a dismissal versus not a good reason for a dismissal, et cetera. And then ultimately I'm going to ask you is why should we not follow that? I'm trying to recall, is Decatur a Supreme Court or a held court case? Held. Again, I would point to the comments that I made earlier that the Supreme Court majority makes a sweeping decision. It rejects the reasoning of the dissent. It's not as if there wasn't someone else up there saying, wait a minute, what about all this prior case law? What about all these previous principles that have been decided in all of the cases before Van Schnoit? And they just say no. Well, in Decatur, Decatur specifically cites FOSTECH, and so does Van Schnoit. And there's got to be a reason that they both cited it. It might not that reason be that there has to be some showing that there was an effort to violate the speedy trial. In Van Schnoit, it was already violated. It was over. Here, and in Decatur, it had not run yet. Those are rather significant. That is a rather significant distinction. Basically, just to refresh your recollection, Decatur is the case that is about there's a dismissal. The court says the toll was termed unless there was bad faith by the state in its motion to dismiss or non-cross. And that was why we sort of looked back around. Should they be held to their reason, good faith versus bad faith, a reasonable explanation versus no explanation? So, again, it comes back to that factual distinction. Well, and again, why is the reference to a purposeful manipulation left out of the decision in Van Schnoit? It seemed to me that what they were saying was perhaps that language is more applicable to a different area of criminal law, like mandatory joinder or like double jeopardy. And they specifically say we're not dealing with that. We're not going to allow that type of language to apply to a speedy trial issue. Speedy trial is just you've got a certain amount of time to do something, and we're not going to allow you to toll the time. If you refile exactly the same charge over again, it's our method of saying we're not going to allow the prosecution to go forward, even if they could do so under double jeopardy principles, even if they could do so under mandatory joinder principles. This is our method of protecting the defendant from this type of activity. All right. You'll have some time for rebuttal. Thank you. Thank you. Good morning. How are you? Very well. Thank you. Good morning, Your Honors. Well, as so often happens, you've taken pretty much everything I had to say about the case, and then some. Obviously, we're talking about what effect NSHUIC has. I think my first observation would be that if the Illinois Supreme Court intended to overturn a long line of cases, as Justice Burgess referred to, which do allow the term to be tolled, they would have said so in a little more specific way. Justice Hutchinson, I think your comment, that wishy-washy language about it may, the speedy trial may affect the tolling. The Supreme Court knows how to overrule a significant body of law, and I don't think that that's the way they do it. Well, if we use their instruction to us, shall means you must, would is or could is next level. May is pretty far down on the line and seems to let those who look at the provisions make certain factual decisions or determinations, which here the court did make that it saw no pattern by the state to avoid that speedy trial. Right. Does it make sense that that's maybe what they were thinking? Well, take NSHUIC. As Justice Burgess said a couple times, the term didn't run. I mean, I don't even understand what the state's theory was of resetting the speedy trial term once it didn't run. If it goes, it goes. That's it. I'm sorry. Under the statute. Well, it was a compulsory joinder case, and the issue, the main issue that the court was dealing with was whether or not this is the same or identical charge or whether it's a different charge. Right. So the state, what they were doing was looking for a brand new term by saying this is a new charge. And the Supreme Court said, no, this is not a new charge. And the dissent, in the very beginning of the dissent, and actually most of the dissent, discusses compulsory joinder. But then as counsel said, at the end of the dissent does go down the path that we're talking about here.  And then the majority sticks to their guns and doesn't say anything different. Maybe you tend to wonder, as counsel was arguing. Again, I think the majority would say it a little more specifically. I mean, this is a blanket rule, as I was understanding the way the defense was arguing it, that the Illinois Supreme Court is completely getting rid of the concept of tolling. I don't think you leave that by, I believe the term was someone used, sub silencio. You would say why you were getting rid of it. That would be my feeling. And I think that the way that Klein dealt with N. Shoik, the specific language was that, I don't know if I can find it real quick. The language is, presumably because the 160-day speed trial limitation had long expired, the court stated, quote, for that reason, voluntary dismissal and subsequent refiling of identical charges that do not toll the statute. You know, the state was playing some sort of a game here. I mean, if you assume that we get past, in N. Shoik, the question of the similarity of the charges, are they the same charge, as you were indicating, then no, there's no reason, there's no way for the state to revive this thing. Same thing in Fosdick. The state has a turf battle and they're playing games with the term time. I don't think that that's the good faith that your honors were referring to. In this case, the state got these charges as a complaint, officers' citations and complaints, I believe. No, I know. And then they dismissed them and their intent was to refile, they refiled the same DUI charges, but they also filed the obstruction charges, a couple other things. And ultimately, the defense came up with a motion to dismiss based on speed trial and compulsory jointer and frankly, I don't exactly understand the speed trial because I don't think it had run by that time. But something about the compulsory jointer caused the state to acquiesce. I don't think they necessarily had to, but they did. When we draw a conclusion, we draw from this, that the state was taking it back. They weren't planning on going on these charges. This was no trick on their part to extend the term. They didn't need to. The business with the officer, the officer was available. Officer Zifo, he was available. So there was really no need for the state to resort to any trickery to extend this term. I think they just thought that they could go one way and they had to regroup and go another way. As it relates to that point, what's your position on the standard of review? The counsel makes a reasonable argument that if we're talking about the 54 days and whether we're going to apply the language that he cites in Van Schoik or Klein, that again, it's a reasonable argument that that's a question of law. If we decide to apply Klein, the court did make a finding that the state was not trying to evade the speedy trial. Is that also an over-review? The classic rule that I always follow and I put in my briefs is, that's a question of law as in Klein versus Van Schoik, their effect on the 55 days. That's de novo. Any fact-finding, which I think this classically is, would be you would give discretion to the trial court's factual determinations. Not as it applies to law, but factual, yeah, you would. So fact findings would be manifest way or are you talking about abuse of discretion? I don't remember what I said in the brief, whatever I said. Did the state concede in the trial court as well as are you conceding an appeal of 108 days? Is the only issue the 54 days? Yeah, the 55 days is the only ones that we were talking about. Is it possible that the purpose of Van Schoik coming up again, even though it is a strange situation since the time had truly run and nobody had done anything about it, is for the court trying to advise practitioners and judges that the rule still is voluntary dismissal and refiling will toll unless there is some specific issue raised and established in the trial court that there is a purposeful avoidance, giving us some direction rather than giving us the very broad statement that had been followed before? I don't think that they said that, but it's not inconsistent because that would still be the long-term understanding of this area. I mean, there are a couple, a few specific reasons why the state can toll. They won't be found to be trying to evade. Clyde mentions the availability of witnesses. Refiling charges is another for enhancements. You know, from Fosdick, that getting terms to match because various agencies can't agree on it is one. We used to have the classic case of the case would be called for trial maybe the second time. The state's witness was not there for a valid reason. The court wouldn't grant a continuance, so the defendant said, Your Honor, I asked you to find the defendant not guilty, and the court would, which would technically be a finding on the merits. And higher courts, I think in this one included, said you can't do that. I mean, that's not appropriate. If you're going to find someone not guilty, there should be a presentation of facts. And so what then happened is, call the case, something's not ready, court won't grant a continuance, the case was dismissed so that they could get their ducks back in line. But then now I think what the court might be saying in Vanshoik is, Okay, you should have had them in line in the first place, but if the defendant proves that you purposefully did this so that he could not have a speedy trial, you know, by some measure of proof, then you're out of the box. It's a possibility. And, you know, again, you don't have the case in, you know, what do they say? Bad cases make bad law. Well, that's true. I'm bad on all those little aphorisms, so I'm not a good source of that. But I think I've responded to everything that Mr. Wechter has said. Unless you have any further questions, I think I'll stay with the brief. Thank you very much, Mr. Stauffer. Thank you very much. All right, Mr. Wechter, let me address a similar question to you. I mean, in the past it was voluntary dismissal and refiling of identical charges will toll. And there might have been some tweaks if the state was trying to get an exception or the state was trying to hide something, something of that nature. And maybe that was just too broad for the Supreme Court. So they tackled this issue straight on when a speedy trial demand question was brought that said, okay, there are some issues that you need to address, trial court, and that is there is a presumption that it's valid because we've said so in all of our earlier cases, the tolling, unless, unless the defendant can establish that there was a purposeful intent to evade the tolling. You think that maybe what Ben Shoik is talking about? I'm thinking maybe that's a possibility. See, and for the defense, I would say the more likely possibility is the Supreme Court is saying, we're not even going to put that burden on the defense anymore. It's the identical charge. The defendant didn't have a burden before in the other cases other than to bring the actual motion at the time. But they didn't have to prove anything. When the state dismissed the charges at 10 days or 50 days or whatever, it got more critical when they were dismissed on the 159th day. But before that time, I don't think the state did a lot to prove why, and the defense didn't do a lot to prove why. It just was a given. Well, and the problem for the defense is how are you going to prove that? Is a police officer going to come in and say, yeah, for the defense, and say, oh, I couldn't make it that day or I was on vacation? How are they, as a practical matter, going to do that? So perhaps the better reading of Anschuich is we're not going to burden the defense with trying to prove very, very difficult things to prove, almost impossible things to prove. We're just going to set out this bright line that says you can't file, dismiss, and refile the identical charge, period. That's what speedy trial was all about. Not about interrupting the term once or twice until you get to 160 days. As I recall, that used to be the law that if the term was interrupted, even for someone in custody by, let's say, a motion by the defense, that the term started running all over again. You were back to day one. I'm showing my age. I was going to say you're much older now, Mr. Fletcher. But then it took a change in the statute to say, no, no, no, no, it interrupts the term. And then you keep on counting when the term starts again. So maybe, again, without expressing it directly, the Supreme Court is saying, well, you know, we don't want to have those types of situations arise again. You have a time in which to bring somebody to trial, just bring them to trial. And you can't get a lot more time by dismissing and refiling. Since we're talking about fine distinctions in cases, can I talk about the second aspect of the speedy trial claim in this case? Sure. Because what happens here is that on the 159th day of the term, Judge Studer says, listen, I'm sorry. I've got a jury trial going today that takes precedence over you, Mr. Waddell. So hang on here. Let's see if we can get someone else to hear the case. And he does that on his own initiative. It's the court system taking step one. Then he finds Judge Dimond. The defense immediately says, I'm sorry, but we're going to have to substitute him, which is the defendant's right, and it's his first opportunity to make that motion. Then what happens? And the answer is nothing very much because Judge Studer does not hold that case for another day, as he had previously indicated he might do, to the 160th day. The defense says, Your Honor, we'll come back tomorrow. Let's see what happens. No, no, he says, I'm not going to do that. And does he try to find another judge to hear this? No. Does he officially transfer the case for reassignment? No. He just says, Well, I'm going to keep it on my call, and we'll see you in a few months. And so Ms. Colton says, I guess the term has been told. Well, actually, I think the judge said that, and she agrees. And she agrees, right, sorry. But what distinguishes this case from cases like Spikusa and this line of cases that says a substitution always is attributable to the defense is that nothing happens after she hands up the motion for substitution. The motion was granted, basically, wasn't it? Pardon me? Wasn't the motion granted because it never went to Judge Dimond, who was a married, betrothed case? Right. He immediately grants the motion. He says, I'm going to keep it on my call. Well, in all these other cases that form the basis for Spikusa, for this rule that a substitution is always attributable to the defense, supposedly, is that you take it from one judge's call and you give it to another judge's call. Well, you don't know, you know, you've jumbled up the mix here. And so you can't just say, Well, I'm going to jump ahead of everybody else on the new judge's call. There's administrative difficulties with doing that. And that's perfectly understandable under that line of cases. But here, none of that occurs. He just keeps it in his own pocket and says, I'm going to continue this case for a few more months. Well, Judge Souter had already gone out to look for another judge. Right. Can't we make, I mean, isn't it reasonable to believe that that was the only one he could find? Or again, talking about what Justice Jorgensen said, do we have to then look at the policy of each circuit to see how a case like this is reassigned? Must it go to the chief judge? Can it go to the presiding judge? How is it to be reassigned? And I don't think we're in a position to tell the circuits in the second district how to reassign their cases. Right. But I don't think you have to do that because either the facts are that it was reassigned to a different calendar requiring the administrative machinery of the courts to adjust itself to the situation, or it wasn't reassigned. And clearly in this case, it was not reassigned. It had to have been reassigned. It went to Diamond. No, it didn't. Yes, it did. Because if it didn't go to Diamond, she filed a motion for substitution without purpose. No, but what I'm saying is they're standing in Judge Souter's courtroom. Right. And she says, here's my motion. I appreciate that. I understand that. But would we be saying to judges, don't cut a defense attorney a little slack, make them pick up their papers and their client and their file and walk down the hall and hand the substitution to the other judge? No. We're not going to make you do that because if you don't, then it's not motion defendant? That's ludicrous. With all due respect. No, no, no. What I'm focusing on is what happens after that. Right. Not whether she has to walk down the hall. That's the point. So she – But if Diamond had said, okay, here's my – it's now my case. She files her motion for substitution. Diamond says, okay, 10-day rule, whatever, I'm going to grant that. The fact that he sends it back to Souter, it now has been reassigned to him. The fact that we didn't make everybody walk down the hall doesn't change, in effect, what happened. But a reassignment is going to someone different than the original trial judge. Can you point to anything in those cases that say that? Yes. All of the cases in the line of Spikusa on down are situations where the original – the trial judge who had the case for trial that day, maybe doesn't physically do it, but he sends it to a different calendar. That's the point. It's not whether she has to walk down the hall to file a motion. It's what happens after that. And in all those cases, what happens after that is a different judge has the file in front of them. Under your theory, then, if most systems have some type of rotating basis, if Diamond had sent it to the presiding judge or the chief judge and Souter's name was the next guy on the list and say, okay, on a random basis you're going to Souter, you'd say, well, you know, five out of six chances your speedy trial was told because it's motion-defendant, but if you go back to the same judge on a random assignment, too bad, so sad. That doesn't seem to make sense that speedy trial rights are dependent on who gets the short slip to get the reassigned case. But if we accept that proposition, then it's easy to subvert the right to a speedy trial on the 159th or the 160th day. By trying to find another judge? No, no, no, by keeping it on the same calendar. That's the issue, isn't it? Whether it's on the same calendar, whether something has to be done with this case that is newly on someone else's plate, they can't just drop everything because this case comes to them. But Souter has had it on his plate for months. But he wasn't available. Pardon me? He wasn't available.  He does do something with it. He was not available because he was on trial. So he said, you know what? You have a speedy trial demand. I'm going to honor that demand. I'm going to find a judge for you, and we're going to try it on the 159th day. And then the defense SOJs. It goes back to Souter. Whether it went to Souter or Judge Smith, if Judge Smith wasn't available that day to drop everything and try it, it would have got a date, and it would have told him the term. But because it went back to Souter, who was unavailable, you're telling us it doesn't tell him the term. Right. Because he knows. He's got this case on his calendar all this time, and he knows it is coming up, and he knows it is a term case. And if the motion for substitution doesn't change any of that, why is it suddenly necessary for his calendar to be turned upside down for Mr. Waddell? It doesn't. But he has to deal with it appropriately. After it comes back, then he has to say, well, come back tomorrow. Let's see what happens. We've got another day. Or I'll try and find someone else. Does he have to do that even when the defense attorney agrees, yeah, the term was troubled? Yeah, because it's on his motion. The whole thing is initiated by him. Oh, wait a minute. But didn't the defendant file a motion for substitution? And then it would be that that motion tolls the term? Are you saying that a trial court can't rely on defense counsel when they say, yeah, you're right, Judge, the term is told? Well, otherwise, what does it mean to say a delay is attributable to the court? Well, when the three parties are standing there, you state the defense in the court, and the defendant says, yes, I agree, this has told the term, can't we in good faith rely, as a judge, rely on the representation of an officer of the court? But the court first says, this told the term now, Ms. Colton. And she says yes. And she makes a mistake and says yes. But it's still, everything is done in his initiative. And he's charged with unknowing what the law is. And he makes this error. It's his error. The suitor's error. Right. Can I, I'm more powerful than I thought I was if I could tell a judge something that was an incorrect statement of the law and it would cover for an error. The defense were to say, Judge, you know, respectfully, we're demanding trial. The term isn't, we don't think the term is told. You know, Your Honor, do what you're going to do, but we're preserving our right. She didn't do that. She said, yes, I agree. Right. And that goes to the waiver argument. But unless my eyes and my memory deceive me, two of the members of this panel are from the same county. And am I wrong that there are literally three or four dozen judges in DuPage County? Well, I'm going to defend it. They're not sitting there doing nothing just like they aren't in McHenry County. They have other things to do. Well, of course, the judges in DuPage were ten hours a day, dawn till dusk, always a full calendar. Right. But you were earlier talking about, we were earlier talking about the difficulty of proof. How is the defendant ever going to prove that someone other than Judge Diamond was really available? Is the system even going to allow him to do that? Is he going to subpoena judges and say, well, we were doing that day, or I want to take a look at your calendar? It's really the obligation of the system. It's the obligation of Judge Souter to say, you know, I looked again, counsel. I looked again, Mr. Waddell, and I'm sorry, there's nobody else available. I mean, the burden is on him to do that. Whether there's somebody else available or not, at some point, your point is it becomes motion court. Absolutely. And that if the case had gone to Diamond and Diamond says, I'm shipping it to the presiding judge, whether or not the defendant's fee trial rights are preserved depends on who the presiding judge would send it back to. Right. They send it back to Souter, you know, we're still on day 159. If we send it to Judge Smith, the term is told. Right. Definitely. That's your argument? Yes. Okay. And otherwise, I mean, I don't want to ascribe evil motives to anybody in this situation, of course, but otherwise it's just too easy to evade the term. Things got tough on the last day or the next to the last day, and sorry, but you're not going to get your trial within 160. All right. Thank you, Mr. Waddell. Thank you. Mr. Stevens, is there anything you want to add on that issue? Because you did not address it because Mr. Walker did not address it. We'll give you a couple of minutes. Really all I need is a couple sentences. In order for the defense, this argument to work, you'd have to believe that the court had any interest in evading the speedy trial term. In my experience, trial court judges don't do that sort of thing. They just look at the rules and they follow the rules. And I think you need a lot more evidence before you can say that he was trying, he had any intent, or you had to be very concerned about a judge trying to evade speedy trial. That's it. Thanks very much. All right. Thank you, gentlemen. This case will be decided, and we will get to a decision in due course. This court now stands in a